THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. ADAM PENA, Defendant-Appellant.

First District (2nd Division)   No. 1—99—3349

Opinion filed March 30, 2001.

Rita A. Fry, Public Defender, of Chicago (Joseph M. Gump, Assistant Public Defender, of counsel), for appellant.

Richard A. Devine, State's Attorney, of Chicago (Renee Goldfarb and Alan J. Spellberg, Assistant State's Attorneys, of counsel), for the People.

JUSTICE McBRIDE delivered the opinion of the court:

Fifteen-year-old defendant Adam Pena was arrested for his role in a shooting that occurred on February 11, 1998. Pursuant to a motion filed by the State, the case was transferred from the juvenile division to criminal court, where defendant was subsequently charged with attempted first degree murder, aggravated battery with a firearm, armed violence, and three counts of aggravated battery. Following a bench trial, defendant was found guilty of attempted first degree murder and sentenced to 18 years in prison. The statutory provision pursuant to which defendant was transferred from juvenile to criminal court was part of an act that has since been declared unconstitutional. Defen-

dant appeals, contending that, due to the unconstitutionality of the act under which he was transferred to criminal court, his conviction should be vacated and the case remanded to juvenile court for further proceedings.

Defendant was arrested after he was identified as one of two persons involved in an incident in which victim David Alcantar was shot six times. Defendant was 15 years old at the time of his arrest. His case was initially referred to the juvenile division of the circuit court. The State then filed a motion to permit prosecution of a minor under the criminal laws. The State based its transfer request on section 5—4(3.3) of the Juvenile Court Act of 1987 (705 ILCS 405/5—4(3.3) (West 1996)). Under section 5—4(3.3), where certain conditions were met, a rebuttable presumption was created that a minor's case should be transferred to criminal court. 705 ILCS 405/5—4(3.3) (West 1996). On July 31, 1998, the State's motion was granted and the matter was transferred to criminal court.

A bench trial was subsequently held and defendant was found guilty of attempted first degree murder and sentenced to 18 years in prison.

The presumptive transfer provision pursuant to which defendant's case was transferred was enacted into law as part of Public Act 88—680, also known as the "Safe Neighborhoods Law," which became effective on January 1, 1995. Pub. Act 88—680, eff. January 1, 1995. On December 2, 1999, Public Act 88—680 was declared unconstitutional in its entirety by our supreme court as violative of the single subject rule of the Illinois Constitution. *People v. Cervantes*, 189 Ill. 2d 80, 723 N.E.2d 265 (1999).

Public Act 90—590 (Pub. Act 90—590, eff. January 1, 1999), otherwise known as the Juvenile Justice Reform Act, enacted presumptive transfer language (705 ILCS 405/5—805(2) (West 1998)) that was similar to the provision that had been in Public Act 88—680. For the purposes of this case, we will assume that Public Act 90—590 did not suffer from the same constitutional infirmities as Public Act 88—680.

On appeal, defendant contends that where Public Act 88—680 was found unconstitutional in its entirety, the presumptive transfer provision under which this case was transferred to criminal court in 1998 was void *ab initio* as of its effective date of January 1, 1995. Therefore, defendant concludes, his conviction must be vacated and his cause remanded to the juvenile court for further proceedings.

The State concedes that all of the provisions contained in Public Act 88—680, including the presumptive transfer provision, were void *ab initio* following *Cervantes*. The parties agree that, where the Act

was void *ab initio*, the state of the law was as if the act had never been passed. *In re G.O.*, 191 Ill. 2d 37, 43, 727 N.E.2d 1003 (2000); *People v. Gersch*, 135 Ill. 2d 384, 390, 553 N.E.2d 281 (1990). The State further concedes that the matter must therefore be remanded for a new transfer hearing.

The parties disagree, however, on what law should be applied at the new transfer hearing. Defendant contends that, on remand, the circuit court should apply the transfer provisions as they existed prior to the enactment of Public Act 88—680. The State, however, maintains that the new transfer hearing should be conducted pursuant to the presumptive transfer provision enacted by the Juvenile Justice Reform Act and now in effect. 705 ILCS 405/5—805 (West Supp. 1999).

Defendant maintains there is no question that the "quantum of punishment" to which he could be subjected increases upon the transfer of his case to the criminal court. Therefore, defendant reasons, if the process through which a transfer could be accomplished were made easier by a change in the law that occurred after the offense was committed, then the retroactive application of that law would disadvantage him and violate *ex post facto* principles.

■ The clause prohibiting *ex post facto* laws found in Illinois's Constitution (Ill. Const. 1970, art. I, § 16) has been read in step with the construction of its federal counterpart (U.S. Const., art. I, § 9, cl. 3). *Fletcher v. Williams*, 179 Ill. 2d 225, 229, 688 N.E.2d 635 (1997); *Barger v. Peters*, 163 Ill. 2d 357, 360, 645 N.E.2d 175 (1994). Under either provision, a criminal law will be considered *ex post facto* where it (1) is retrospective in that it applies to events occurring prior to its enactment, and (2) falls into one of the traditional categories of prohibited criminal laws. *People v. Criss*, 307 Ill. App. 3d 888, 896, 719 N.E.2d 776 (1999). These traditional categories include any statute that punishes as a crime an act previously committed and innocent when done; laws that make the punishment for a crime more burdensome after its commission; and statutes that deprive one charged with a crime of any defense available at the time when the act was committed. *Collins v. Youngblood*, 497 U.S. 37, 42, 111 L. Ed. 2d 30, 39, 110 S. Ct. 2715, 2719 (1990), citing *Beazell v. Ohio*, 269 U.S. 167, 169-70, 70 L. Ed. 216, 217, 46 S. Ct. 68, 68 (1925).

■ Defendant's contention that application of the current transfer provision would "disadvantage" him does not necessarily mean that application of the provision would violate *ex post facto* principles. The United States Supreme Court has "retreated from earlier opinions suggesting that changes affecting punishment automatically fall within the *ex post facto* prohibition if they operate to the 'disadvantage' of covered offenders." *In re J.R.*, 302 Ill. App. 3d 87, 126, 704 N.E.2d 809

(1998). In *California Department of Corrections v. Morales*, 514 U.S. 499, 506 n.3, 131 L. Ed. 2d 588, 595 n.3, 115 S. Ct. 1597, 1602 n.3 (1995), the Supreme Court noted that after *Collins* "the focus of the *ex post facto* inquiry is not on whether a legislative change produces some ambiguous sort of 'disadvantage,' *** but on whether any such change alters the definition of criminal conduct or increases the penalty by which a crime is punishable." See also *Fletcher*, 179 Ill. 2d at 234, quoting *Morales*, 514 U.S. at 506 n.3, 131 L. Ed. 2d at 595 n.3, 115 S. Ct. at 1602 n.3. Our own Illinois Supreme Court, in discussing the traditional *ex post facto* category of laws that increase punishment, noted that, following *Collins*, if a law does not make more burdensome the punishment for a crime after its commission, "it is of no moment that the law may work to a prisoner's disadvantage." *Barger*, 163 Ill. 2d at 361-62; see also *Fletcher*, 179 Ill. 2d at 234 (noting that, in *Morales*, the Supreme Court had "reaffirmed its rejection of an offender's 'disadvantage' as an element in the test for determining whether a criminal law was *ex post facto*").

■ Under the presumptive transfer provision enacted in Public Act 90—590 and now in effect (705 ILCS 405/5—805(2) (West Supp. 1999)), defendant's case may be transferred to criminal court or may remain in juvenile court. Significantly, even if the new provision does not apply and the court on remand were to use the discretionary transfer provision that existed prior to Public Act 88—680, defendant might still be subject to prosecution under the criminal laws. 705 ILCS 405/5—4(3) (West 1992). The presumptive transfer provision now in effect did not, therefore, by virtue of its enactment, either create the possibility of defendant being transferred to criminal court or increase the penalty for the acts committed by defendant. Instead, it merely changed the conditions under which a juvenile may be transferred to criminal court.

■ Amendatory acts that are procedural in nature may be retrospectively applied to pending matters. *People v. Nitz*, 173 Ill. 2d 151, 162, 670 N.E.2d 672 (1996), *overruled on other grounds by People v. Mitchell*, 189 Ill. 2d 312, 727 N.E.2d 254 (2000). According to the Illinois Supreme Court, whether a defendant is tried in juvenile or criminal court is a matter of procedure. *People v. P.H.*, 145 Ill. 2d 209, 222, 582 N.E.2d 700 (1991); *People v. DeJesus*, 127 Ill. 2d 486, 498, 537 N.E.2d 800 (1989). In *People v. Taylor*, 76 Ill. 2d 289, 302, 391 N.E.2d 366 (1979), the court held that a transfer hearing, while important to a juvenile, does not determine guilt or innocence but is instead dispositional in nature, determining the forum in which guilt or innocence will be adjudicated. The court in *Taylor* also quoted extensively from an opinion of the Supreme Court of Washington in which that

court discussed the nature of a juvenile court transfer hearing. The Washington Supreme Court stated that a juvenile transfer hearing does not result in a determination of delinquency or " 'result in a determination of guilt as may a criminal trial; and does not directly result in confinement or other punishment as may both a delinquency hearing and a criminal proceeding. In short, the transfer hearing is not an adversary proceeding.' " *Taylor*, 76 Ill. 2d at 302-03, quoting *State v. Piche*, 74 Wash. 2d 9, 14, 442 P.2d 632, 635-36 (1968). In *People v. Bryant*, 278 Ill. App. 3d 578, 585, 663 N.E.2d 105 (1996), this court noted that the juvenile transfer provision "merely defined the applicability of the Juvenile Court Act."

The fact that the transfer provision in question does not itself increase the punishment for the crimes committed by defendant distinguishes the instant case from *In re F.G.*, 318 Ill. App. 3d 709 (2000), and *In re R.T.*, 313 Ill. App. 3d 422, 729 N.E.2d 889 (2000), relied upon by defendant. In both *F.G.* and *R.T.*, the juvenile offenders were sentenced under a provision of Public Act 88—680 that required a mandatory minimum commitment of five years. Under the law prior to Public Act 88—680, the defendants would not have been subject to a mandatory minimum sentence. After Public Act 88—680 was declared unconstitutional, the defendants argued that their causes should be remanded for resentencing under the law as it existed prior to Public Act 88—680. The State in both cases maintained that the Juvenile Justice Reform Act's mandatory minimum provision, enacted subsequent to the provision invalidated when Public Act 88—680 was struck down, should be applied instead. In *R.T.*, 313 Ill. App. 3d at 432, the court found that because commitment was the only possible disposition under the new law, while the sentencing judge had discretion to impose probation under the pre-Public Act 88—680 law, the new law provided for a harsher range of punishment and was therefore substantive and not procedural. In *In re F.G.*, 318 Ill. App. 3d at 717, the court similarly found that where the new law, as opposed to the old law, mandated a five-year prison sentence, the quantum of punishment had been affected and the change in sentencing was substantive rather than procedural. Here, where the new transfer provision was concerned only with the methods employed in determining whether cases involving minors may be transferred to criminal court, and there was no change in the quantum of punishment attached to defendant's acts, the changes were clearly procedural in nature. See *Dobbert v. Florida*, 432 U.S. 282, 293-94, 53 L. Ed. 2d 344, 356, 97 S. Ct. 2290, 2298-99 (1977).

■ We conclude that the presumptive transfer provision added by Public Act 90—590 and currently in effect is procedural in nature.

Where it does not "punish as a crime an act previously committed, which was innocent when done; nor make more burdensome the punishment for a crime, after its commission; nor deprive one charged with crime of any defense available according to law at the time when the act was committed," the application of the retroactive procedural transfer provision enacted by Public Act 90—570 does not violate *ex post facto* principles and may be applied on remand. See *Collins*, 497 U.S. at 52, 111 L. Ed. 2d at 45, 110 S. Ct. at 2724.

The State argues that, regardless of which transfer provision is to be utilized on remand, the trial court's determination that defendant was proven guilty of attempted first degree murder beyond a reasonable doubt must not be disturbed. The State, however, has failed to support this contention with any authority. The trial in the instant case occurred following a juvenile transfer that was conducted pursuant to a provision that was part of an act later found to be unconstitutional in its entirety and void *ab initio*. Defendant, on remand, is entitled to a new transfer hearing followed by a new trial.

Defendant's conviction is vacated and this matter is remanded to the juvenile court for a new transfer hearing based on the law now in effect, followed by further proceedings as necessary.

Conviction vacated; cause remanded with directions.

GORDON and COUSINS, JJ., concur.